The fourth and final case for argument this morning is 22-1580 Imran Gatabi. Good morning. Good morning, Your Honours. Imran Gatabi, appellant in this case, and may it please the Court. I'd like to begin with obvious misrejections. First, the cardiac pacemaker case, in which the court held that recognition of a need does not provide a reason to find motivation to combine. My opponent rejects 21 claims, and the rationale she mentions for finding motivation to combine is basically arguing there is a need for the combined references. And none of the needs that my opponent addresses is in my patent claims. So I respectfully refer the Court to footnotes of page 18 of the reply brief for each of these claims. So for claim 3-5, the examiner mentioned the need to make the device useful for a memory application and to be able to retain its data. For claim 6-8, the need to having a good storage density and permanent data storage without thermal diffusion problems. For 10-13, 15-17, and 24-13, the examiner mentioned the need to increase the density of 3D memory cells, and so on and so forth. So the patent addresses implementing a shortcut gate edge to improve the read and write speed, and also to having a smaller change in the gate to turn on the transistor. It doesn't address the needs that the examiner just mentioned. The need, for example, for thermal diffusion problems, for increasing the density, and for other needs that the examiner... Let me just ask you. Firstly, I thought your first argument on motivation was not so much on the substance, but just on the fact that... Well, I didn't see any arguments about why the findings of motivation were incorrect, except for this need mentioned. Instead, you seem to argue that the number of references used in combination was a mitigating factor for the motivation to combine. I don't think you cited any cases that we have that would support that sort of theory. Do you have any? Your Honor, this argument is the number four argument, and the last argument in the motivation to combine section on page 18 of the brief. But for the number of references, as you mentioned, there is an Indra Gorman case that the court held that basically rejected the claims based on 13 prior arts. But I asked the court to, in light of the Supreme Court's decision in KSR, which, you know, before KSR there was a more explicit requirement to find motivation. But after KSR, that requirement has been removed. So currently there is, as I put in that section, I put except from an article that describes that currently there is a disconnect between district courts' rulings and also... Let me move on. You do make an argument, and I think you started referencing it here, that the recognition of a need in the application for the proposed combinations is not a proper basis to find motivation. That's right, Your Honor. Why is that? If the art itself recognized a need, and that's what the examiner found, then why wouldn't a POSA be motivated to meet that need? Your Honor, in Cardiac Pacemaker, the court held that it's not a reason. It's simply if there is only a need. And in KSR, the court held that if the need addressed by the patent claim, if that need addressed by the patent claim, then it could be a basis for finding motivation to combine. So the question is if these needs that the examiner mentions addressed by the patent claim at issue, which is this patent claim, and they are not addressed by the patent claims. So we don't look at the prior art references that we're combining? We don't just look at the patent claims to determine motivation? I'm not clear what you're saying. Yeah, we do. So the examiner mentions a need for motivation to combine, basically arguing that there is a need in the art to combine the references. So that need only can be a basis for finding motivation to combine if that need is addressed by my patent claim, and that's basically based on KSR. So if that need is just a need in the art based on the Cardiac Pacemaker case, it's the same as Cardiac Pacemaker case, that shouldn't be a motivator for combining. Can I just clarify something? Yes, sir. If the grounds the PTO relies on for motivation to combine two references, perhaps because the PTO sees that a skilled artisan would understand there's some advantage in a feature in the secondary reference that would somehow improve the device disclosed in the first reference, in your view that's not a legitimate motivation to combine if that purpose of adding that feature from the secondary reference is a different purpose than the purpose underlying your claimed invention? Is that your argument? That's correct, Your Honor. If it's not addressed by my patent claim, so the KSR says that. The purpose of your patent claim to create these edged gate electrodes is because you can increase the electric field at the edge and then through that you can lower the biasing voltage needed for the gate electrodes, right? That's right, Your Honor. But the prior art combination, at least the primary reference, isn't concerned at all about needing a lower biasing voltage. It's all about lengthening out the, I forget what to call it, the fins. They want the fins to be as long as possible because there's some other advantage to having extra long fins. And so because that, even though the combination might look just like the claimed invention, the purposes behind the design of the prior art are different than the purposes you're gunning for and so therefore this is an illegitimate 103 combination. That's correct, Your Honor. So it's, if I'm not mistaken, the KSR said that purpose, that need, should be addressed by the patent claims application at issue or something of that sort. Don't we have case law, perhaps it was in the PTO brief, that says whatever the motivation might have been for a skilled artisan to combine two references, it doesn't have to be the same motivation that the inventor had in inventing his claimed invention. Don't we have case law that says that? So could you rephrase that, Your Honor? Oh, okay. I guess don't we, the Federal Circuit, have case law that rejects the premise of your argument that the motivation to combine two references has to be the same motivation and purpose behind what the inventor of you, your invention, what your purpose was. If it just turns out that there's a legitimate motivation to combine these references and it happens to arrive at the exact same device as your claimed device, that's still an okay Section 103 obviousness rejection under our case law. Am I not remembering our case law correctly? I'm not sure about that, Your Honor. I'm not aware of the case. But if that purpose is a need in the market, the need, that need should be addressed by the patent claim. That's what KSR refers to. But if the purpose is not based on a need, it's just not based on some need in the art, then maybe what you have just said, Your Honor, might be the case. Can I ask you about another one of your arguments? You fault the board, and I guess the examiner, for not identifying clearly enough who the person of ordinary skill in the art is. Did you raise any dispute about who the person of ordinary skill in the art is during the prosecution or proceedings? No, you withdraw that argument, Your Honor. Oh, you did. Okay. So I'd like to discuss about the anticipation rejection. So in the anticipation rejection of claim one, the issue basically comes down to we have a drawing that is not to escape. So the question is, can we look at that drawing and figure out if two surfaces are parallel, and two surfaces are perpendicular, and two surfaces are, one surface is a flat surface. So that's what the issue comes down to. And the test that we have is whether each of them requires a measurement based on the Augustine case. So if any of them requires a measurement because the drawings are not to escape, then it's not allowed. So examiner proposes that we can make this determination by quote-unquote visual inspection of the drawings. We can basically define whether two surfaces are parallel, two surfaces are perpendicular, and one surface is a flat surface. The figures reasonably disclose the angle and the flat surface limitation, right? Yes, Your Honor. If we assume that figures are to escape, that's correct. But here the figures are not to escape. But doesn't... Well, we don't just have reliance on the figures here. There's text that's relied on the specification, right? Yes, Your Honor. And doesn't that help the other side in support of the argument? It helps, but it's... If we want to define the exact angle, my argument is if we want to define the exact angle, we've got to make that sixth assumption that I addressed in the briefs. So if the two sides are not parallel and are not perpendicular, so how do we know they are parallel or perpendicular? By measurement. So if we assume that they are parallel by looking at the figure. So the question is, do we want to allow a viewer to make a determination just by looking at the drawing which is not to escape? Do we want to allow that viewer to define, to determine that angle is... The thing in Anderson is cutting through the gate of Anderson at an angle, right? I mean, that's what the Anderson reference actually says. That's correct. So once it's cutting through an angle like that, why wouldn't that create something less than 90 degrees? Yeah, it would create something less than 90 degrees, but the question is how much. So that number, in order to come to the exact number... Wouldn't it be reasonable to conclude that it discloses something that's 88 degrees or less? I guess you're saying maybe it's 89 degrees, and so it's perhaps the most subtle of angles. Yeah, so some claims it could be, but some claims also address lower numbers, than 88 degrees. Why don't we hear from the government and reserve the remainder of your time for rebuttal? Let's hear from the government in your rebuttal. Thank you, Your Honor. May Peace Court, William LaMarca for the PTO. In response to the first argument, Your Honor... Can you just, while it's still on my mind, the debate we were having, the discussion we were having about need and what KSR says, because I think this actually, I think this is a quote from your brief in KSR, and it does say, any need or problem known in the field of endeavor at the time of the invention and addressed by the patent can provide a reasoning for compliance. So isn't that what your friend's argument is, that it also has to be, the need has to be addressed in the patent? I understand that's his argument, but... And isn't that what KSR says? What we have quoted on page 33 of our brief from KSR, quote, the question is not whether the combination was obvious to the patentee, but whether the combination was obvious to a person of ordinary skill in the art. And we further say, any problem or need known in the field of endeavor at the time of the invention and addressed by the patent can provide a reason. But then the next sentence, the law does not require that the references be combined for the reasons contemplated by the inventor. In other words, the reasoning can come from the prior art. The inventor sitting in his room with the prior art in front of the ordinary artisan, and he discovers problems and needs to solve those problems, that can be the reason driving or motivating that inventor, that ordinary artisan, to combine those teachings. And even if those reasons aren't the same as the applicant or the patentee... So you don't think the need addressed, or the problem addressed by the patent in this one sentence in KSR means what your friend says it means? I don't think that it's irrelevant, but I don't think it's required. I think the further reading of this whole paragraph that we put in our brief is that the driving motivators can come from the ordinary artisan, can come from the prior art, other than the applicants applied for application or the applicants, in this case, it's a reissue application. Bottom line, it doesn't have to be the same problem that they're solving. It can be a different purpose or a different reason. And that's enough as a reason for an ordinary artisan to make a combination to render it obvious. I mean, that's our position on the law, Your Honor. So now we can continue where you were going. Okay, thank you. So that was what I was going to do, I was just going to address the first part of his argument, which is the 103, and that's basically a legal argument. He doesn't really get into the specifics of the teachings of what the examiner determined. We've kind of laid that out on a roadmap in our brief if you're interested. With respect to anticipation, the critical claim feature that we're debating here is is there an internal gate angle of less than 88 degrees? That's what is in the claim. And as Judge Chen pointed out, if you look at Figure 16 on page Appendix 243 of the Anderson and Refress, for example, that's the figure that the examiner and the board look to along with the written description to help supplement that. And the fin is fin 54, and it's underneath the gate conductor, the gate, which is 102, that goes over it. And it's on an angle. And it's true, we can't sit here with a protractor or with a ruler and determine the specific angle that's in this picture, but when you look at the written description, the written description of the Anderson Reference, and we pointed this out in our brief, it makes it pretty clear. For example, the angle between the fin 54, I'm at page 246, column 2, at the very top of the page of the Anderson publication, the angle between fin 54 and gate conductor 102 could be between 5 and 85 degrees, and more specifically, between 30 and 60 degrees, and even more specifically, 45 degrees. So what Anderson is all about, if you just step back away from this thing for a second, it's a semiconductor, and it's a method of manufacturing, a method of making the semiconductor. And the way these are made, I'm not a semiconductor expert, but what I've learned from reading this patent about five or six times and reading the other patents here is the semiconductors, it's assembled in pieces. It's not all made all at once. First, they make the lower substrate level. Then they make the fin, and then the fin is placed on top of the substrate. Then the gate conductor is formed over the fin. These are all done in pieces. And if you read throughout this Anderson Reference, you'll see multiple references to lamination, layers. You'll see statements about linearity and linear sidewalls, and parallel and non-parallel and perpendicular. In fact, they're talking in terms of relevant angles and relevant relationships of the components. Now, it's true what Appellant argues, what Mr. Gattabi argues is accurate. Those drawings are not to scale. In other words, we don't know how large or how small this is, but that's not necessary, because what we're really talking about is the relative relationship between the fin and the gate conductor, which tells us about the angles that the written description talks about. And we know for sure that the internal gate angle is the same angle as the angle between the gate conductor and the fin, because the gate conductor is formed over the fin, which means there are surfaces in that gate conductor that make an edge, and that edge has an angle, and that angle is less than 88 degrees, precisely what is required by the claim. And that was the evidence that we believe, the substantial evidence, that supports the examiner's finding and the board's affirmance of the examiner. I guess that reasoning about the angle created between the fin and the gate being the same angle as some interior angle between two surfaces of the gate electrode is necessarily premised on the belief that all the lines that look parallel here are in fact parallel, and all the lines that look perpendicular to each other are in fact perpendicular. Is that right? I think that's correct, and Mr. Gattabi's argument is that, well, we don't know that these lines are parallel, that these surfaces are flat. He says if you look at that picture, it's not to scale, and you can't really tell. That might be a curve. Isn't there also an observation in the paper that says that the curved line can sometimes appear straight? Yeah, and I think Mr. Gattabi points that out in his brief and his brief before the board as well. But the examiner responded to that. The examiner pointed out, when you have multiple views of a drawing, which, by the way, you do with figure 16, because figure 16, if you look at an earlier figure in the drawings, you'll go back to page 8, appendix 237. If you look at figure 3, figure 3 shows a top view looking down above what figure 16 is showing from the side, and that shows you that those fins are straight, they're parallel, and they're on an angle with respect to the gate conductors. And I think that's the examiner's response, is that when you have multiple views of a particular picture, like if you had a curved wire, which I think Mr. Gattabi uses as an example, if you look at it from one angle, it may look like a straight line, but if you have a picture from another view, you'll know that it's not straight, that it's curved. And we've got those multiple views here in Anderson to confirm that, indeed, the fins are straight, the gates are straight, and they're on an angle with respect to each other. In fact, if you read through the reference, there's multiple references that Anderson speaks in terms of these things being parallel to each other, these things being spaced from each other, or being perpendicular from each other, or not being perpendicular. They talk in language of angling and language of parallel and spacing. So we know that the ordinary artisan reading this reference is going to understand that this picture, although it's not an actual embodiment of the real device in the real world, it is a figurative drawing, a schematic drawing, of what the semiconductor device has looked like, the way it's assembled. So that's kind of where the examiner is. What's our standard of review on that finding? These are fact findings that we're talking about, and that's the substantial evidence standard, which means if the Court agrees that this evidence that I pointed to in the record is substantial and supports the examiner's finding, then the Court would defer to that finding, Your Honor. Can I ask you about Claim 9? I think Mr. Katabi specifically calls out at page 42 of his brief that in Claim 9 there's not really a sufficient explanation as to the examiner's rationale or the Board, indeed, for why they approved of what the examiner said. Can you help me on that? Well, if I took you to the examiner's answer, and I put it in our brief at page 16 of the government's brief, you'll see for dependent Claim 9, further requiring a method of making a device in Claim 1 using lithography masking. So it's basically the masking technique and how they manufacture this. And if you go to page... I'm in the examiner's answer right now. I'll find the precise page. The Board cited the 84-85. Yeah, that might have been the final rejection, which was later just referenced in the answer. But let's go to 84-85. There we go. Page 84 and 85 of the appendix is the examiner's final rejection, which is later referenced in the answer, but there's more detail here. He goes through why Claim 9 is obvious. He explains that Anderson teaches the method of making a fin FET, that's a field effect transistor device, recited in Claim 1, and the method includes the step of lithography mask to pattern the fins, but what it doesn't show is it doesn't show the step of using a lithography gate mask for making the gate conductor. And then he goes on and he says, but the Admitted Prior Art, Figure 6 of the applicant's device shows that feature. And he says, therefore, here's the reasoning on why you would take Anderson's teachings, combine it with the Admitted Prior Art, and arrive at an obvious result, which means that would be an obvious feature as well. And there's about a page and a half of the reasoning and explanation by the examiner here on pages 84 and 85. So it's not as if the examiner ignored this topic. The examiner did give enough reason. What he argues now, really, is more, we applied kind of the wrong standard of obviousness, that we're not acknowledging the problems or the needs in his patent, and that should be the same exact need or problem here, and we already discussed that with Judge Crouse earlier. I didn't have anything further unless there were further questions from you, Your Honors. Thank you. Okay, thank you very much. Your Honors, with respect to the determination whether the surfaces are parallel, perpendicular, or flat, the Court has set a test in Hockerson-Halbert's case. So the question is whether each of those requires a measurement. So for finding out whether two surfaces are parallel, it needs a measurement, measurement of space between those surfaces. Whether a surface is perpendicular, it needs a measurement, a measurement of that angle. And based on the Halbert's case, it shouldn't be allowed. And my opponent also addressed different views of the drawing, the top view and side views. So if we rely on the judgment of the viewer in this case, it would cause inconsistency in future litigation. So we would rely on a viewer to define whether two surfaces are parallel in a drawing which is not to escape. So I don't have further... Thank you.